UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:18-CV-00748-WO-JLW

| | |
|---|---|
| LORENZO QUINTANA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BRANCH BANKING & TRUST COMPANY,<br><br>Defendant. | **BRANCH BANKING AND TRUST COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FRCP 12(b)(6)** |

## INTRODUCTION

Plaintiff's opposition hinges upon his legal argument that predictive dialers are *per se* automatic telephone dialing systems ("ATDSs") under either prior FCC orders that Plaintiff contends continue to be valid following the D.C. Circuit's opinion in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. Mar. 16, 2018) ("*ACA Int'l*"), or according to the statutory definition of the term. As covered in BB&T's opening brief, Plaintiff's position finds some support in case law but ultimately does not withstand scrutiny. And because Plaintiff's theory of the case at the pleading stage hinges entirely upon his position that predictive dialing devices are necessarily ATDSs, his TCPA claim fails and the complaint should be dismissed with prejudice.

1

# ARGUMENT

## I. THE D.C. CIRCUIT INVALIDATED ALL PRIOR FCC RULINGS THAT PREDICTIVE DIALERES ARE AUTOAMTIC TELEPHONE DIALING SYSTEMS

Plaintiff argues that the FCC's 2003 and 2008 Orders remain valid following *ACA Int'l* because: (a) the D.C. Circuit noted in dicta that either one of the FCC's conflicting positions taken in those orders might be permissible; and (b) the D.C. Circuit did not "expressly" reject the 2003 and 2008 orders. Plaintiffs' two arguments suffer from numerous logical failings.

First, although it is true that the D.C. Circuit noted in dicta that it "*might* be permissible" for the FCC to adopt one—but not both—of its conflicting positions on the definition of ATDS,[1] the point is ultimately a red herring. Nothing about that dicta detracts from the D.C. Circuit's ultimate holding *setting aside* the FCC's overall "treatment of those matters" concerning the functions a device must perform to qualify as an ATDS because the Commission had "fail[ed] to satisfy the requirement of reasoned decisionmaking." *Id*.

Second, the D.C. Circuit's invalidation of the FCC's "treatment" of "the functions a device must perform to qualify as an autodialer," was not—as Plaintiff argues—confined solely to the 2015 Declaratory Ruling. And contrary to Plaintiff's second

---

[1] As covered in BB&T's opening brief, the FCC had taken the position that a device qualifies as an ATDS only if it can generate random or sequential numbers to be dialed, while simultaneously ruling that a device could qualify as an ATDS even if it lacked that capacity. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7974-76 (2015) (the "2015 Declaratory Ruling"); *ACA Int'l*, 885 F.3d at 702.

argument, the court in *ACA Int'l* expressly addressed the validity of the FCC's prior 2003 and 2008 orders in its opinion.

As set forth in BB&T's opening brief, the D.C. Circuit extended the reach of its opinion to invalidate the FCC's 2003 and 2008 Orders, starting with the court's rejection of the FCC's challenge to its jurisdiction based on the fact that the 2015 ruling had simply "reaffirmed" the FCC's prior rulings on the same exact topic. *ACA Int'l*, 855 F.3d at 702. And because the FCC's 2015 Order "reaffirmed and reiterated its approach," it "brought the entire agency definition of ATDS up for review in the D.C. Circuit." *Johnson v. Yahoo!, Inc.*, No. 14-cv-02028, 2018 WL 6426677, at *2 (N.D. Ill. Nov. 29, 2018). Moreover, the D.C. Circuit's "ruling encompassed a review of all 'pertinent pronouncements' by the FCC,"—not just the 2015 Order—then proceeded to "set aside the agency's 'treatment' of the qualifying functions of an ATDS," thereby "wip[ing] the slate clean." *Id*. (citing *ACA International*, 885 F.3d at 701-703). Thus, the scope of the D.C. Circuit's review in *ACA Int'l* extended back to the original 2003 Order that had been reaffirmed in the subsequent 2008 and 2015 Orders.

Additionally, the substantive reasoning of the D.C. Circuit confirms that the court reached the validity of the FCC's prior orders. As addressed by BB&T in its opening brief (DE 17 at 9–10), the D.C. Circuit's holding was driven by the FCC's inconsistent position that an ATDS was a device with the capacity to generate telephone numbers randomly or in sequential order, but that a device could also qualify as an ATDS even if it did not have this capacity. *ACA Int'l*, 855 F.3d at 702–03. That conflict was present not

3

only in the 2015 ruling, but—as many courts have found—in each of the FCC's "pertinent pronouncements" concerning the functions a device must perform to qualify as an ATDS. *ACA International*, 885 F.3d at 701; *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 935–36 (N.D. Ill. 2018); *Richardson v. Verde Energy USA, Inc.*, No. 15-6325, 2018 WL 6622996, at *5 (E.D. Pa. Dec. 17, 2018). As recently explained by the court in *Richardson*:

> A careful parsing of *ACA International* indicates that the invalidation of the 2015 Order necessarily invalidated the 2003 and 2008 Orders as well. Recall that the D.C. Circuit found the 2015 Order arbitrary and capricious because it gave "no clear answer," as to the critical question of "whether a device must itself have the ability to generate random or sequential telephone numbers to be dialed," or whether it would be "enough if the device can call from a database of telephone numbers generated elsewhere." In *ACA International*, the D.C. Circuit explained that, in their determination that all predictive dialers qualified as ATDSs, the 2003 and 2008 Orders were similarly inconsistent as to this basic question.

2018 WL 6622996, at *5 (internal citations omitted); *see also Pinkus*, 319 F. Supp. 3d at 935.

The court's holding in *ACA Int'l* was also based upon a lack of clarity—present in the 2015 order *and* the original 2003 Order—over the "basic function[s]," of an ATDS. *ACA Int'l*, 55 F.3d at 703. For instance, the D.C. Circuit found that the FCC's prior rulings lacked clarity because the FCC had found a "basic function" of an ATDS "is to dial numbers without human intervention," while leaving open the possibility that "a device might still qualify as an autodialer even if it cannot dial number without human

4

intervention." *Id.* The FCC also identified another "basic function" of an ATDS as the ability to "dial thousands of numbers in a short period of time," but provided "no additional guidance concerning whether that is a necessary condition, a sufficient condition, a relevant condition even if necessary nor sufficient, or something else." *Id.* Nor did the Commission "indicate what would qualify as a 'short period of time." *Id.* As a result, the FCC's serial rulings left "affected parties…in a significant fog of uncertainty about how to determine if a device is an ATDS so as to bring into play the restrictions on unconsented calls." *Id.*

Thus, the narrow reading of *ACA Int'l* urged by Plaintiff here would effectively moot the D.C. Circuit's opinion, and leave intact each of the prior FCC orders that suffer from the same multiple failures of reasoned decisionmaking discussed above. Indeed, Plaintiff's position is analogous to saying a 2015 model year car has a defectively designed engine, but the 2003 and 2008 model years of the car—with the same exact engine—somehow run just fine. The position is not only illogical, but would require the Court to ignore the fact that each of the "materially identical" and "inextricably intertwined," rulings by the FCC in 2003, 2008, and 2015 share the common failures of reasoned decisionmaking set forth by the court in *ACA Int'l*. *Pinkus*, 319 F. Supp. 3d at 936; *see also Richardson*, 2018 WL 6622996, at *5.

5

## II. THE PLAIN LANGUAGE OF THE TCPA REQUIRES RANDOM OR SEQUENTIAL NUMBER GENERATION

Plaintiff argues that even if the 2003 and 2008 Orders are invalid, predictive dialers still perform the functions of an ATDS as set forth in the statutory definition of the term, which states:

> The term "automatic telephone dialing system" means equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.

47 U.S.C. § 227(a)(1).

Plaintiff interprets these words to mean that a device qualifies as an ATDS if it can "store and dial telephone numbers," or "produce numbers randomly or sequentially and then dial them." (DE 28 at 6.) This is the same interpretation of the statutory language espoused by the Ninth Circuit in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018), and Plaintiff urges this Court to adopt the interpretation here.

As addressed extensively in BB&T's opening brief, this is an incorrect interpretation of the statutory language, and there are numerous reasons why the Court should not follow *Marks*. (DE 17 at 15–21.) BB&T will not repeat those arguments here, and Plaintiff did not address them in his opposition. Additionally, since BB&T filed its opening brief, multiple courts have declined to follow *Marks*, and have found the statutory definition requires a device to have the capacity to generate telephone numbers in randomly or in sequential order. *See Roark v. Credit One Bank, N.A.*, No. CV 16-173 (PAM/ECW), 2018 WL 5921652, at *3 (D. Minn. Nov. 13, 2018); *Johnson,* 2018 WL

6

6426677, at *2; *Harbach v. USAA Fed. Sav. Bank*, No. 15-CV-2098-CJW.KEM, 2019 U.S. Dist. LEXIS 3687, at *38-43 (D. Iowa Jan. 9, 2019).

The court in *Johnson* also addressed Plaintiff's next argument: that "an interpretation limiting ATDSs to equipment with random or sequential number generation would read the word 'store' out of the statute." (DE 28 at 7.) As explained by the court, this interpretation:

> does not make the term "store" superfluous. The word "store" ensures that a system that generated random numbers and did not dial them immediately, but instead stored them for later automatic dialing (after, for example, some human intervention in activating the stored list for dialing) is an ATDS. This is consistent with the problem, including database marketing, Congress addressed in the TCPA.

*Johnson*, 2018 WL 6426677, at *2 n.4.

Finally, Plaintiff argues that predictive dialers meet the statutory definition of ATDS because such devices are able to generate telephone numbers randomly or in sequential order. (DE 28 at 8.) Plaintiff's argument is based upon two authorities, neither of which supports his position.

*Manuel v. NRA Grp.*, LLC, 200 F. Supp. 3d 495, 501 (M.D. Pa 2016), simply quotes the portion of the FCC's 2003 Order stating that predictive dialers are capable of dialing set lists of telephone numbers randomly, in sequential order, or from a database of numbers. But the definition of ATDS is not concerned with the order in which a set list of telephone numbers is dialed. Instead, it is based upon the manner in which those telephone numbers are generated in the first instance. *ACA Int'l*, 885 F.3d at 694, 702.

7

Thus, the order or manner in which a device calls telephone numbers that have already been generated is irrelevant to the question of whether a device performs the functions necessary under the statutory definition to qualify as an ATDS. *Id*.

*Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 786 (N.D. Ill. 2016) states that a predictive dialer might be considered an ATDS "*if* the equipment possessed the capacity to dial random or sequential phone numbers." And the court's ruling in that case was based upon the FCC's now-invalidated 2003 and 2015 Orders finding that predictive dialers qualify as an ATDS. *Id.* at 788–90. So *Blow* does not support Plaintiff's blanket proposition that "predictive dialers have the capacity to use random or sequential number generation," and in any event was based upon the FCC's invalidated 2003 and 2015 Orders.

Based upon the foregoing, the statutory definition of ATDS does not encompass predictive dialers, and as such, Plaintiff's contention that BB&T used a predictive dialer does not suffice to establish the element of ATDS use. The Court should therefore grant BB&T's motion to dismiss.

### III. PLAINTIFF HAS NOT AND CANNOT ALLEGE BB&T CALLED HIM WITH A DEVICE THAT RANDOMLY OR SEQUENTIALLY GENERATED TELEPHONE NUMBERS

Finally, Plaintiff argues that the allegation he heard a pause in connection with the single call he alleges he received from BB&T is sufficient to establish that BB&T used a predictive dialer to call Plaintiff. (DE 28 at 8–9.) But as discussed above, predictive dialers are no longer considered ATDSs, so Plaintiff's allegations of BB&T's use of a

predictive dialer is not sufficient to establish the essential element of ATDS use. *See Pinkus*, 319 F. Supp. 3d at 939; *Fleming v. Assoc. Credit Servs., Inc.*, Civ. No. 16-3382 (KM) (MAH), 2018 WL 4562460, at *8–11 (D.N.J. Sept. 21, 2018).

In fact, Plaintiff's allegations—whether concerning the single call he claims he received, or the unverified anonymous third party complaints he allegedly found online—are inconsistent with an allegation that BB&T was using a random or sequential number generator. Instead, the Complaint most plausibly alleges that BB&T was calling specific telephone numbers trying to reach specific customers to discuss specific accounts. Such allegations belie an inference that BB&T was indiscriminately dialing telephone numbers that had been generated in random or sequential fashion. Plaintiff must allege facts establishing BB&T "uses a system that has the ability to store or produce telephone numbers to be called using a random or sequential number generator." *Lord*, 2018 WL 3391941, at *6. Thus, while Plaintiff's allegation that he heard a pause upon answering one phone call might arguably be sufficient to plausibly plead BB&T's use of a predictive dialer, it is not sufficient to plead that BB&T called Plaintiff's number using a device that generated the telephone number either randomly or in sequential fashion. *Pinkus*, 319 F. Supp. 3d at 939; *Fleming*, 2018 WL 4562460, at *8–11.

Finally, Plaintiff argues that the D.C. Circuit struck down the FCC's one-call safe harbor, so the fact that Plaintiff only alleges one call in his complaint is of no moment, and BB&T should still be subject to Plaintiff's class claims. This issue was addressed in BB&T's concurrently filed brief in support of its motion to strike Plaintiff's class

9

allegations. (DE 19 at 14-15.) And since then, the court in *Roark* confirmed that in the context of a reassigned telephone number—as is the case here—BB&T was entitled to reasonably rely upon the consent it obtained from the prior subscriber, and its ability to do so was not confined to one, or two, or any other arbitrary number of phone calls absent BB&T's knowledge of the reassignment. *Roark*, 2018 WL 5921652, at *3.

## **CONCLUSION**

For the reasons set forth herein, and in BB&T's opening brief, the Court should grant BB&T's motion to dismiss.

Respectfully submitted this 11th day of January, 2019.

*/s/ Artin Betpera*
Artin Betpera*
Susan Nikdel*
WOMBLE BOND DICKINSON (US) LLP
3200 Park Center Drive, Suite 700
Costa Mesa, CA 92626
Telephone: 657-266-1013
Email: Artin.Betpera@wbd-us.com
Email: Susan.Nikdel@wbd-us.com

*By special appearance

Brent Powell
NC Bar No. 41938
WOMBLE BOND DICKINSON (US) LLP
One West 4th Street
Winston-Salem, NC 27101
Telephone:  336-728-7023
Facsimile:  336-726-9023
Email:  Brent.Powell@wbd-us.com

*Attorneys for Defendant BB&T Corporation*

# CERTIFICATION OF WORD COUNT

I hereby certify pursuant to Local Rule 7.3 of the Middle District of North Carolina, that the foregoing Memorandum of Law complies with the 3,125 word limit.

/s/ Artin Betpera
Artin Betpera*
Susan Nikdel*
WOMBLE BOND DICKINSON (US) LLP
3200 Park Center Drive, Suite 700
Costa Mesa, CA 92626
Telephone: 657-266-1013
Email: Artin.Betpera@wbd-us.com
Email: Susan.Nikdel@wbd-us.com

*By special appearance

Brent Powell
NC Bar No. 41938
WOMBLE BOND DICKINSON (US) LLP
One West 4th Street
Winston-Salem, NC 27101
Telephone: 336-728-7023
Facsimile: 336-726-9023
Email: Brent.Powell@wbd-us.com

*Attorneys for Defendant BRANCH BANKING AND TRUST COMPANY*

# **CERTIFICATE OF SERVICE**

      I hereby certify that on January 11, 2019, the foregoing document was served on opposing counsel by filing the same on the CM/ECF system, which will send electronic notification to the following:

Scott C. Harris
WHITFIELD BRYSON & MASON LLP
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone:   (919) 600-5003
Facsimile:   (919) 600-5035

Joshua D. Arisohn
Andrew Obergfell
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, NY 10019
Telephone:   (646) 837-7150
Facsimile:   (212) 989-9163
E-Mail:   jarisohn@bursor.com
              aobergfell@bursor.com

Attorneys for Plaintiff

                                              */s/ Artin Betpera*
                                              Artin Betpera